**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| **HELPING EVERY ADDICT RECOVER DAILY (HEARD)** | ) | |
| ***Plaintiff*,** | ) | |
| **v.** | ) | **Civil Case No. __________________** |
| **CITY OF TEXARKANA, ARKANSAS; PUBLIC WORKS DIRECTOR TYLER RICHARDS, in his official and individual capacity; PLANNING AND ZONING OFFICER JAMIE FINLEY, in his official capacity; and WARD 5 DIRECTOR DANNY JEWELL, in his official and individual capacity.** | ) | |
| ***Defendants*.** | ) | |

**COMPLAINT**

Plaintiff Helping Every Addict Recover Daily ("H.E.A.R.D"), through its counsel Kendall Lewellen of Legal Aid of Arkansas, files this action for injunctive relief and damages against the City of Texarkana, Arkansas; Public Works Director Tyler Richards, in his official and individual capacity; and Planning and Zoning Officer Jamie Finley, in her official capacity, and Ward 5 Director Danny Jewell in his official and individual capacity for violating its rights under the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq*.; the Americans with Disabilities Act, 42 U.S.C. § 12132; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; the Arkansas Fair Housing Act, Ark. Code Ann. § 16-123-201 *et seq*.; and the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101 *et seq*.

1. Plaintiff H.E.A.R.D is a nonprofit corporation that provides recovery housing for women with substance use disorder ("SUD"). H.E.A.R.D owns and operates a recovery residence

at 14 Downing Dr, Texarkana, Arkansas ("Property"), which was established with a $486,000 state grant to house twelve (12) women in recovery.

2. Defendants, the City of Texarkana, Arkansas ("City") and its officials, have engaged in a sustained campaign of discrimination, coercion, and obstruction that has prevented H.E.A.R.D from operating its recovery residence at full capacity since December 2023. The City have classified a therapeutic recovery residence as a commercial "boarding house" under city ordinances. The City further demanded that H.E.A.R.D relocate to a high-crime, impoverished zone unsuitable for recovery housing. The City threatened to cut utilities and issue criminal citations if H.E.A.R.D housed more than four (4) residents. Federal investigators spent nearly two years investigating the City and negotiated a conciliation agreement that the City Board of Directors voted not to approve against the advice of the City's attorney and staff.

3. As a result of Defendants' unlawful conduct, H.E.A.R.D has been forced to operate at one-third of its capacity, cannot charge program fees that it needs for financial stability, has lost its peer support staff, faces a $486,000 grant repayment obligation, and has been prevented from serving women in recovery who need and deserve access to safe, supportive housing.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under the laws of the United States, including the Fair Housing Act, 42 U.S.C. § 3613; the Americans with Disabilities Act, 42 U.S.C. § 12133; and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794a.

5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as those claims are so related to the federal claims that they form part of the same case or controversy.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because all Defendants are located in this District and all acts and omissions giving rise to this action occurred in this District.

## PARTIES

7. Plaintiff Helping Every Addict Recover Daily ("H.E.A.R.D") is a nonprofit corporation incorporated and operating in Arkansas. Its mission is to help people in recovery from SUD build life skills and live independently. H.E.A.R.D owns and operates a recovery residence for women at 14 Downing Dr, Texarkana, Arkansas.

8. Carlotta Powell is the Executive Director of H.E.A.R.D. Ms. Powell personally guaranteed a state grant that funded the Property and is personally liable for repayment of $486,000 if grant milestones are not met. She lives in Miller County, Arkansas.

9. Defendant City of Texarkana, Arkansas (the "City") is a municipal corporation and political subdivision of the State of Arkansas. The City is subject to Section 504 of the Rehabilitation Act because it accepts federal funding, including Community Development Block Grant (CDBG) funds from the United States Department of Housing and Urban Development (HUD). The City exercises zoning and land use authority over the Property through its Planning and Zoning Commission, Board of Directors, and Code Enforcement offices.

10. Defendant Tyler Richards is and was at all relevant times the Public Works Director for the City. He is sued in his official and individual capacity. Richards was at all relevant times acting under color of law.

11. Defendant Jamie Finley is and was at all relevant times a Planning and Zoning Officer for the City. She is sued in her official capacity. She was at all relevant times acting under color of law.

12. Defendant Danny Jewell is and was at all relevant times the Director of Ward 5 of the City of Texarkana. He is sued in his official and individual capacity. He was at all relevant times acting under color of law.

## FACTUAL BACKGROUND

### A. <u>H.E.A.R.D's Mission, Grant, and Property</u>

13. Plaintiff H.E.A.R.D is a nonprofit organization whose mission is to help women in recovery from SUD develop the life skills necessary to live independently and become productive members of their communities. Exhibit 1, ARORP General Funding Application, pages 4-5 (September 29, 2023).

14. H.E.A.R.D received a $486,000 grant from Arkansas Opioid Recovery Partnership (AORP) to open and operate a recovery residence in Texarkana, Arkansas, in October 2023. Exhibit 2, ARORP Notice of Award Funding, pages 1-2 (November 14, 2023).

15. The Grant required H.E.A.R.D to house twelve (12) women in recovery at the Property. Under the Grant's sustainability plan, residents would pay $500 per month in program fees. These fees would cover household expenses, utilities, and staff salaries, including a peer support position. Exhibit 1, page 6. The Grant also required H.E.A.R.D to house all twelve residents by June 1, 2024. Exhibit 3, ARORP General Application Milestones, page 1.

16. H.E.A.R.D bought a four-bedroom, two-bathroom home at 14 Downing Dr, Texarkana, Arkansas ("Property") on December 8, 2023, to run a recovery residence. Exhibit 4, Warranty Deed, pages 1–2. The Property sits in a residential neighborhood zoned R-2 Single Family Residential under the City's Code of Ordinances. Exhibit 5, 14 Downing Zoning, pages 1–2.

17. The recovery residence would give women with SUD a structured, supportive place to live. A peer supervisor and peer support specialist would watch residents closely to make sure they followed the recovery program. Exhibit 1, page 5. H.E.A.R.D would help residents get an education, medical care, mental health care, and jobs. *Id*. page 4. Residents would also learn life skills like budgeting, parenting, and getting licenses. *Id.* This programming is therapeutic and rehabilitative in nature and is fundamentally distinct from any commercial lodging operation.

**B. The City's Pre-Purchase Targeting from June Through October 2023**

18. Ms. Powell, H.E.A.R.D's Executive Director, talked with City officials, including Defendant Richards, as early as June 2023. This was more than six months before H.E.A.R.D bought the Property. City officials told Ms. Powell that a recovery residence would count as a "boarding house" and pointed her toward R-4 zoning.

19. Defendant Richards emailed Ms. Powell on October 26, 2023, to tell her that he had received "a number of inquiries" from neighbors who had heard that H.E.A.R.D bought the Property, and that "many folks in the neighborhood are concerned about a halfway house at this location." Exhibit 6, Email from Tyler Richards to Carlotta Powell, pages 1–2 (Oct. 26, 2023). Richards reminded Ms. Powell that the Property would need rezoning to R-4 before H.E.A.R.D could run it. *Id*. H.E.A.R.D had not yet bought the Property at that time and no resident had ever set foot in it.

20. The City mobilized in October 2023 because neighbors worried about "a halfway house," before any resident with a disability had moved in. This timing is direct evidence that bias against people with disabilities drove the City's actions.

**C. Post-Purchase Threats and Discriminatory Classification in December 2023**

21. Defendant Richards emailed Ms. Powell on December 11, 2023, three days after H.E.A.R.D closed on the Property. He said H.E.A.R.D needed to get permission from the Planning Commission before moving residents into the home. Exhibit 6, Email from Tyler Richards to Carlotta Powell (Dec. 11, 2023). He also said the City would cut utility service to the house if H.E.A.R.D did not comply. *Id.*

22. Richards made this threat as a City official acting under color of law. He made it because H.E.A.R.D exercised its right to operate disability-related housing. The threat unlawfully interfered with, coerced, and intimidated H.E.A.R.D, in violation of 42 U.S.C. § 3617.

23. Defendant Richards was told that the Fair Housing Act protected H.E.A.R.D's residents. He responded on December 27, 2023, that "the issue is a zoning matter and has nothing to do with the occupants." Exhibit 6, Email from Tyler Richards to Joshua Potter, page 3 (Dec. 27, 2023). This response shows Richards willfully refused to address the City's duties under the FHA.

24. The City's Planning and Zoning Director stated on December 27, 2023, that the City's ordinances define a "boarding house" as "a dwelling or part thereof where meals and/or lodging are provided for compensation for 2 or more persons not transients." She said this definition made the recovery residence a boarding house, and boarding houses are permitted only in R-4 zones. Exhibit 7, Email from Jamie Finley to DiAnne Barfield (Dec. 27, 2023). The Director also described H.E.A.R.D as "a nonprofit that was set up in order to apply for the grant and purchase the house." This description suggests the City doubted H.E.A.R.D's legitimacy and viewed its disability-related mission with bias. *Id.*

25. The City's "boarding house" classification is discriminatory as applied. The City's Code of Ordinances, § 28-142, defines "Family" as "one (1) or more persons related by blood or marriage . . . or a group of not to exceed four (4) persons not all related by blood or marriage,

occupying premises and living as a single, nonprofit housekeeping unit." Exhibit 8, Texarkana, AR Code Ordinance 50-314. Under this definition, more than four unrelated people living together in R-2 triggers the boarding house classification and forces the residence into R-4, no matter how therapeutic or nonprofit the arrangement is. *Id.* This scheme systematically excludes disability-related group living from residential neighborhoods, in violation of the FHA.

26. The City did not direct H.E.A.R.D to R-4 zones because of any legitimate commercial land use concern. R-4 zones in City are disproportionately located in high-crime, impoverished areas that are unsuitable for recovery housing. H.E.A.R.D's social model of recovery requires a neighborhood setting including community integration, stability, and belonging are therapeutic necessities, not preferences. Relegation to R-4 would not provide a reasonable alternative; it would defeat the purpose of the program.

**D. Formal Proceedings Including Rezoning Application, Reasonable Accommodation Request, and Denials From January Through February 2024**

27. H.E.A.R.D applied to rezone the Property from R-2 to R-4 on December 19, 2023, on the advice of City officials. Exhibit 9, Rezoning Application (December 19, 2023).

28. Ms. Powell filled out the rezoning application and paid the required $200 fee on January 3, 2024.

29. H.E.A.R.D's attorney sent a reasonable accommodation request to Defendant Richards and the City's Planning and Zoning Officer on January 5, 2024. Exhibit 10, Reasonable Accommodation Letter from Jason Auer to Jamie Finley and Tyler Richards (Jan. 5, 2024). The letter specifically asked for "a zoning variance and/or a conditional use permit to allow H.E.A.R.D to operate a recovery residence at 14 Downing Dr, Texarkana, Arkansas." *Id.* at 2. The letter explained that H.E.A.R.D's residents needed this accommodation because the social model of recovery requires a neighborhood setting, and sending residents to R-4 zones in undesirable parts

of town would hurt their ability to fully recover from SUD. *Id*. at 1. The letter asked for a written response by January 12, 2024. *Id*.

30. The City provided no response to the January 5, 2024, reasonable accommodation request, including a denial, a request for additional information, or an acknowledgment. The City's total silence in the face of a formal, written, FHA-invoking reasonable accommodation request constitutes a denial of that accommodation and an independent violation of the FHA's interactive process requirements.

31. The Planning Commission held its monthly meeting and unanimously denied H.E.A.R.D's rezoning application on January 9, 2024. Two community members spoke against the rezoning and referenced a petition signed by about ninety (90) neighbors who opposed the recovery residence. The City acted on and validated community animus against people with disabilities.

32. On February 5, 2024, H.E.A.R.D and its attorney appeared before the City Board of Directors to appeal the Planning Commission's denial. The Board denied the appeal. During the meeting, the City's attorney suggested that a zoning variance or conditional use permit might be a more appropriate avenue than rezoning, which is the precise relief H.E.A.R.D already requested in its January 5 reasonable accommodation letter.

33. Defendant Richards called Ms. Powell by telephone on February 6, 2024. Richards told her she needed to make a plan to move H.E.A.R.D's three residents out of the home within one week, or the City would start issuing criminal citations. This threat, made against women with disabilities who lawfully lived in a home H.E.A.R.D owned, is unlawful interference, coercion, and intimidation under 42 U.S.C. § 3617.

34. On February 7, 2024, H.E.A.R.D's attorney sent a letter to the City Attorney, Defendant Richards, and Defendant Finley informing them that H.E.A.R.D would be filing a HUD complaint. Exhibit 11, Letter from Jason Auer to Josh Potter, Jamie Finley, Tyler Richards (February 7, 2024). The letter confirmed that H.E.A.R.D would voluntarily limit occupancy to four (4) residents and would not charge program fees while the HUD investigation was pending. H.E.A.R.D did this to comply with the City's ordinances and avoid criminal citations. *Id*. at 2.

**E. HUD Administrative Complaint and Investigation**

35. H.E.A.R.D filed a formal complaint with HUD on February 20, 2024. The complaint alleged that the City had violated Sections 804(a), 804(f), and 804(f)(3)(B) of the Fair Housing Act and Section 504 of the Rehabilitation Act. Exhibit 12, Housing Discrimination Complaint (Feb. 20, 2024). This HUD complaint tolled the FHA's two-year statute of limitations under 42 U.S.C. § 3613(a)(1)(B).

36. The City's Planning Commission considered a proposed ordinance to address group homes on October 8, 2024. The ordinance failed. The City considered adding "exclusionary language" during the meeting to keep group homes out of the "center of neighborhoods." The City also rejected a second sober living facility's application at the same meeting and called it a "boarding house."

37. The HUD investigator circulated a draft Conciliation Agreement on December 10, 2024. Exhibit 13, Draft Reconciliation Agreement/Voluntary Compliance Agreement. The draft agreement required the City to: (1) let H.E.A.R.D operate a recovery residence at the Property; (2) let H.E.A.R.D house twelve (12) individuals at the Property; (3) require named City officials, including Defendant Richards, the Assistant PWD, the Planning Secretary, administrative assistants, the Personnel Administrator, the Building Official, and code enforcement officers, to

attend a three-hour fair housing training within 180 days; and (4) present a proposed ordinance to the City Board that would allow special-use permits for group homes in residential zones. *Id*. at 5-6.

38. The City Board of Directors passed a new ordinance establishing special use authorization for group homes in residential zones on December 17, 2024, under pressure from the HUD investigation and conciliation process.

39. H.E.A.R.D signed the Conciliation Agreement on January 27, 2025. Exhibit 14, HEARD Signature Page (January 27, 2025).

40. The City's Board of Directors considered a resolution to allow the City Manager to enter into the conciliation agreement at a public meeting on February 18, 2025.

41. Staff recommended that the Board of Directors adopt the resolution.

42. The meeting included a presentation by an attorney retained by the City of Texarkana, who advised the Board of Directors to adopt the resolution and warned them of the liabilities the City could face if it did not.

43. Ward 5 Director and Defendant Jewell spoke against the resolution. He asked the City's counsel if she informed HUD of concerns from neighbors and she confirmed that she did. He asked if she was giving more weight to the concerns of neighbors as opposing to "financial penalties" the City may face if it did not approve the conciliation agreement. He stated that his priority as an elected official is to "look out for these people—who elected me—and to worry about the finances as a secondary reason to enter into this agreement, which absolutely leaves all these people out." He suggested that they not "impose" the conciliation terms on the community and make them "pay for our mistake, in essence." He told the other Directors that he hopes that all who vote different will "look at these people and tell them that 'we really don't care, we care more

about our finances than what this is going to do to your neighborhood.'" He said that the City should litigate the issue rather than allow a recovery residence in the neighborhood.

44. The City's Board of Directors voted to not to approve the resolution.

**F. Ongoing Harm and Damages**

45. Defendants' unlawful conduct has forced H.E.A.R.D to limit occupancy to four (4) residents to avoid criminal citations and charge no program fees to avoid classification as a boarding house since February 2024.

46. The Grant required H.E.A.R.D to reach maximum capacity of twelve (12) residents by June 1, 2024. That milestone was not met due to Defendants' unlawful conduct. H.E.A.R.D obtained extensions from AORP but has been unable to meet the extended deadlines. If H.E.A.R.D cannot meet the Grant's milestones, Ms. Powell, who is personally liable under the Grant, faces a $486,000 repayment obligation.

47. The City's conduct has cost H.E.A.R.D. at least $86,400 per year since February 2024. Specifically, H.E.A.R.D must fill twelve (12) beds. Each bed should bring in $600 per month in program fees, which totals $7,200 per month or $86,400 per year.

48. H.E.A.R.D cannot afford to keep its peer support staff position because it cannot collect program fees. This position is a key part of the recovery model and a grant requirement. H.E.A.R.D will have to cut this position if the current situation continues.

49. H.E.A.R.D cannot apply for additional grant funding, including a planned grant for a men's recovery residence, until this matter is resolved.

50. Neighbors have driven slowly past the Property and photographed the residents and the house. Residents of the Property, who are women with disabilities who are in recovery, have

been afraid to go outside as a result. This hostile environment, enabled and validated by the City's actions, has harmed H.E.A.R.D's residents and undermined its therapeutic mission.

51. Defendants' conduct has diverted H.E.A.R.D's resources from its mission of serving women in recovery to defending itself from discriminatory state action. This has directly frustrated H.E.A.R.D's mission, since it prevents H.E.A.R.D from serving the twelve (12) women it was funded and designed to serve.

**ADMINISTRATIVE EXHAUSTION AND TOLLING**

52. H.E.A.R.D filed a timely complaint with HUD on February 20, 2024, alleging violations of the Fair Housing Act and Section 504 of the Rehabilitation Act. Filing this complaint tolled the FHA's two-year statute of limitations under 42 U.S.C. § 3613(a)(1)(B) for as long as the administrative proceeding lasted.

53. H.E.A.R.D received notice on February 26, 2026, that DOJ would not file a civil action.

54. Arkansas's three-year personal injury statute of limitations governs H.E.A.R.D's ADA Title II and Section 504 claims, Ark. Code Ann. § 16-56-105, which has not expired.

55. The City's discriminatory conduct constitutes a continuing violation. Each day H.E.A.R.D is prevented from housing twelve (12) residents and collecting program fees constitutes a fresh discriminatory act, extending the limitations period and the accrual of damages through the date of judgment.

**CAUSES OF ACTION**

**COUNT ONE: VIOLATION OF THE FAIR HOUSING ACT, 42 U.S.C. § 3604(a) BY DENIAL OF HOUSING**

56. Plaintiff incorporates all preceding paragraphs by reference.

57. It is unlawful to refuse to sell or rent a dwelling to a person, or otherwise make a dwelling unavailable or deny it to a person, because of a disability. 42 U.S.C. § 3604(a)

58. Women with SUD are persons with a disability within the meaning of the Fair Housing Act. 42 U.S.C. § 3602(h).

59. Defendants' actions, including their classification of the recovery residence as a boarding house, their refusal to grant a reasonable accommodation, their threats of utility shutoff and criminal citation, and their rejection of the Conciliation Agreement, have made the Property unavailable as a dwelling for women with SUD and have prevented eight (8) women with disabilities from accessing the housing they need.

60. Defendants' conduct violates 42 U.S.C. § 3604(a).

## **COUNT TWO: VIOLATION OF THE FAIR HOUSING ACT, 42 U.S.C. § 3604(b) BY DISCRIMINATORY TERMS AND CONDITIONS**

61. Plaintiff incorporates all preceding paragraphs by reference.

62. 42 U.S.C. § 3604(b) makes it unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, because of a disability.

63. Defendants have imposed discriminatory conditions on H.E.A.R.D's operation of the Property, including the four-resident cap, the threat of utility cutoff, and the threat of criminal citation, that are not imposed on comparable non-disability-related residential uses in R-2 zones. Faced with these threats, H.E.A.R.D. was forced to forgo program fees entirely, since charging rent to more than a handful of residents would have triggered the City's "boarding house" classification and exposed H.E.A.R.D. to the same enforcement threats. These conditions are imposed because of the disability of the intended residents.

64. Defendants' conduct violates 42 U.S.C. § 3604(b).

**COUNT THREE: VIOLATION OF THE FAIR HOUSING ACT, 42 U.S.C. § 3604(f)(2) BY DISCRIMINATORY ZONING AND LAND USE**

65. Plaintiff incorporates all preceding paragraphs by reference.

66. 42 U.S.C. § 3604(f)(2) makes it unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a disability.

67. The City's application of its zoning ordinances, including its "family" definition, § 28-142; its "boarding house" definition; and its R-2/R-4 classification scheme, to exclude recovery residences from residential neighborhoods constitutes discrimination in the terms, conditions, and privileges of housing because of disability.

68. The City's consideration of and responsiveness to neighborhood opposition against persons with disabilities, its steering of disability-related housing to undesirable zones, and its proposed addition of "exclusionary language" to keep group homes out of "the center of neighborhoods" further evidence discriminatory zoning and land use practices.

69. Defendants' conduct violates 42 U.S.C. § 3604(f)(2).

**COUNT FOUR: VIOLATION OF THE FAIR HOUSING ACT, 42 U.S.C. § 3604(f)(3)(B) BY FAILURE TO MAKE REASONABLE ACCOMMODATION**

70. Plaintiff incorporates all preceding paragraphs by reference.

71. 42 U.S.C. § 3604(f)(3)(B) makes it unlawful to refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.

72. On January 5, 2024, H.E.A.R.D formally requested a reasonable accommodation, specifically a zoning variance and/or conditional use permit to allow it to operate a recovery residence at the Property. The request was made in writing, invoked the FHA by name, articulated

the nexus between the disability of the residents and the requested accommodation, and requested a response by January 12, 2024.

73. The requested accommodation is necessary: the social model of recovery that H.E.A.R.D employs requires a neighborhood residential setting. Relocation to R-4 zones, which are high-crime, impoverished areas, would defeat the therapeutic purpose of the program and make the recovery residence inaccessible to persons in recovery. Without the accommodation, women with SUD cannot enjoy equal access to stable, therapeutic housing in a residential neighborhood.

74. The requested accommodation is reasonable: allowing twelve (12) women to reside in a four-bedroom home in an R-2 zone does not impose an undue burden on the City, does not fundamentally alter the residential character of the neighborhood, and is consistent with the purpose of the City's own recently-enacted group home ordinance.

75. The City has never responded to H.E.A.R.D's reasonable accommodation request. Total non-response to a formal, written, FHA-invoking request for accommodation, which was maintained for over two years, constitutes a denial of that accommodation and reflects a failure to engage in any interactive process.

76. H.E.A.R.D was not required to exhaust an application process that did not exist. H.E.A.R.D's own counsel confirmed in writing, before HUD was ever contacted, that "no procedure in the Texarkana Code of Ordinances" permitted a request for a variance, and that no conditional use permit was available for a boarding house use in an R-2 zone. Exhibit 11, Letter from Jason Auer to Josh Potter, Jamie Finley, and Tyler Richards (Feb. 7, 2024). The City's own response to the HUD complaint confirmed the same thing from its side, taking the position that Arkansas law bars a zoning board from granting a variance for a use not otherwise permitted in the zone. Ark. Code Ann. § 14-56-416(b)(2)(B)(i)(b). Unlike a plaintiff who has an available

accommodation process and simply declines to use it, see One Love Hous., LLC v. City of Anoka, 93 F.4th 424 (8th Cir. 2024), H.E.A.R.D. had no such process to invoke. The absence of any mechanism by which a person with a disability could seek relief from the R-2 boarding-house exclusion is itself the reasonable-accommodation violation; the FHA required the City to create such a mechanism, which it eventually did through the special-use-permit ordinance it passed on December 17, 2024, more than two years after H.E.A.R.D.'s written request.

77. Defendants' conduct violates 42 U.S.C. § 3604(f)(3)(B).

## COUNT FIVE: VIOLATION OF THE FAIR HOUSING ACT, 42 U.S.C. § 3617 BY INTERFERENCE, COERCION, AND INTIMIDATION

78. Plaintiff incorporates all preceding paragraphs by reference.

79. 42 U.S.C. § 3617 makes it unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of such person's having exercised or enjoyed, any right granted or protected by the Fair Housing Act.

80. Defendant Richards, acting under color of law, made the following threatening communications to Ms. Powell: (1) on December 11, 2023, Defendant Richards sent an email threatening to cut utility services to the Property if H.E.A.R.D proceeded with housing residents without Planning Commission approval; (2) on February 6, 2024, Defendant Richards called Ms. Powell by telephone and stated that she needed to remove H.E.A.R.D's three residents from the Property within one week or the City would issue criminal citations.

81. Defendant Richards made these threats under color of law because H.E.A.R.D. was operating disability-related housing and he wanted H.E.A.R.D. to scale back that operation. These threats were made under color of law in direct response to H.E.A.R.D's exercise of its right to operate disability-related housing and were designed to coerce H.E.A.R.D into abandoning or

limiting that exercise. H.E.A.R.D. incurred damages when it had to limit occupancy to four residents and to eliminate program fees in response.

82. Defendants' conduct violates 42 U.S.C. § 3617.

**COUNT SIX: VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12132**

83. Plaintiff incorporates all preceding paragraphs by reference.

84. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

85. The City is a "public entity" within the meaning of the ADA. 42 U.S.C. § 12131(1).

86. Women with SUD are qualified individuals with a disability within the meaning of the ADA.

87. The City's zoning and land use practices, including its exclusion of recovery residences from residential zones, its failure to provide a reasonable variance from its zoning rules, and its threats of enforcement against disability-related housing, constitute discrimination by a public entity on the basis of disability in violation of Title II.

88. Defendants' conduct violates 42 U.S.C. § 12132.

**COUNT SEVEN: VIOLATION OF SECTION 504 OF THE REHABILITATION ACT, 29 U.S.C. § 794**

89. Plaintiff incorporates all preceding paragraphs by reference.

90. Section 504 of the Rehabilitation Act protects qualified individuals with disabilities from exclusion, denial of benefits, and discrimination in any program or activity that receives

federal financial assistance, when that exclusion, denial, or discrimination occurs solely because of their disability. 29 U.S.C. § 794.

91. The City receives federal financial assistance, including CDBG funds from HUD, as confirmed by the HUD Conciliation Agreement. The City's zoning and code enforcement activities constitute a "program or activity" for purposes of Section 504.

92. The City's discriminatory zoning practices, as described herein, have excluded women with SUD from residential housing based on their disability in violation of Section 504.

93. Defendants' conduct violates 29 U.S.C. § 794.

**COUNT EIGHT: VIOLATION OF THE ARKANSAS FAIR HOUSING ACT, ARK. CODE ANN. § 16-123-201 ET SEQ.**

94. Plaintiff incorporates all preceding paragraphs by reference.

95. The Arkansas Fair Housing Act, Ark. Code Ann. § 16-123-201 et seq., prohibits discrimination in housing based on disability and mirrors the protections of the federal Fair Housing Act.

96. Defendants' conduct, as described herein, constitutes discrimination in housing on the basis of disability in violation of the Arkansas Fair Housing Act.

**COUNT NINE: VIOLATION OF THE ARKANSAS CIVIL RIGHTS ACT, ARK. CODE ANN. § 16-123-101 ET SEQ.**

97. Plaintiff incorporates all preceding paragraphs by reference.

98. The Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101 et seq., prohibits discrimination on the basis of disability and provides a cause of action for individuals subjected to such discrimination.

99. Defendants' conduct, as described herein, constitutes discrimination on the basis of disability in violation of the Arkansas Civil Rights Act.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court grant judgment in its favor, and against Defendants, as follows:

(1) Declare that Defendants have violated the provisions of applicable federal and state laws;

(2) Order Defendants to take appropriate affirmative action to prevent them from repeating the conduct described in this complaint. Specifically, order Defendants to:

(a) Let H.E.A.R.D operate a recovery residence at 14 Downing Drive, Texarkana, AR, with up to twelve (12) residents;

(b) Let H.E.A.R.D charge program fees to residents of the Property;

(c) Stop taking any enforcement action against H.E.A.R.D, including criminal citations, utility shutoffs, or any other adverse action, based on the number of residents or the collection of program fees;

(d) Process and grant H.E.A.R.D's request for a reasonable accommodation, including a special use authorization, zoning variance, or conditional use permit, consistent with the Fair Housing Act; and

(e) require all named City officials to complete a fair housing training seminar lasting at least three hours within 90 days of this Court's order;

(3) Award compensatory damages in an amount to be determined at trial, including but not limited to lost program fee revenue of $86,400 annually from February 2024 through the date of judgment, grant repayment exposure and consequential grant losses, lost peer support salary, and lost future funding opportunities such as the planned men's recovery residence grant;

(4) Award punitive damages against Defendants Richards and Jewell;

(5) Award reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 3613(c)(2), 42 U.S.C. § 12205, and 29 U.S.C. § 794a;

(6) Award pre- and post-judgment interest; and

(7) Order such other and further relief as this Court deems just and proper.

RESPECTFULLY SUBMITTED,

Helping Every Addict Recover Daily
Plaintiff

By: [signature]

Kendall Lewellen, Ark. Bar 2016193
Legal Aid of Arkansas
320 Executive Court, Suite 201
Little Rock, AR 72205
T: 870-972-9224 ext. 6608
F: 800-967-9224
klewellen@arlegalaid.org

Date: September 21, 2026